Good morning, Council. May it please the Court. Good morning, Your Honors. My name is Paulo Lima. I'm here on behalf of the appellant, Berna Kellner. If ever a case cried out to take a step back and have a little perspective, this is one of them. I'd start by observing the purpose of Daubert, which is, of course, to ensure the reliability of expert testimony, but with the end goal of keeping junk science out of the courtroom. And this case is not one involving junk science. And I guess I'd start out with observing what this case is not. It's not an environmental toxic tort case. It's not a pharmaceutical products liability case where the jury needs to understand the interaction of drugs within the body to cause cancer. It's not a forensic accounting case or anything of that nature. What we have here is a 56-year-old woman who slipped and fell on a popped balloon aboard a cruise ship, immediately felt pain, and was diagnosed a few minutes later with a ruptured Achilles tendon. I'll go through a little bit of the evidence on that, which was available to Dr. Herrera, the plaintiff's expert, in which he reviewed and discussed during the voir dire. There's actually a video of the accident. Ms. Kellner is viewed walking without any difficulty, even walking on her tiptoes with a balloon between her legs, without any difficulty prior to the accident. She then slips on the balloon. There's evidence that she heard a loud or an audible pop, felt a sharp pain in her calf, and immediately fell to the ground. Within 15 to 20 minutes of that, she's loaded into a wheelchair and taken to the ship's infirmary, where the defendant's own doctor conducted objective testing, including an X-ray and the Simmons-Thompson test, which confirmed or after which he diagnosed her with a ruptured Achilles tendon. Within a week of returning home to Oklahoma, she sees her physician, who orders an MRI. The MRI, again, provides objective evidence that she has a ruptured Achilles tendon, confirming the diagnosis of the shipboard physician. And within a week of that, she undergoes surgery to repair that. Now, enter Dr. Mauricio Herrera, a board-certified orthopedic surgeon who was the expert for the plaintiff in this case. He physically examined Ms. Kellner. He spoke to her about the injury. He took her medical history, confirming that she had never had any problems with her Achilles tendon. He reviewed past medical records, including the ship physician's diagnosis of a ruptured Achilles tendon. And he applied his medical training and experience as a board-certified orthopedic surgeon, which has not been questioned by the appellee in this case, his qualifications, that is. And then he did something that is not available to the vast majority of doctors in any case. He was able to view a video of the incident, confirming exactly what Ms. Kellner told him had happened. And he stated during his voir dire, quote, that is exactly how people tear their Achilles tendon. He didn't rely. Let me ask you this. Yes, Your Honor. The standard of review is an abuse of discretion, right? Yes, Your Honor, it is. And the Eleventh Circuit has said that the Court of Appeals reverses the district judge's decision on Adaubert if the judge applies the wrong law, if the judge follows the wrong procedure, if the judge bases the decision on clearly erroneous facts, or if the judge commits a clear error of judgment. Which of those is your claim? Your Honor, the one that is most clear here is that the district court applied the wrong legal standard. The district court in two ways. First of all, it ignored the voluminous amount of case law, which I won't repeat here. It's cited in our briefs, holding that a physician's methodology is reliable under Adaubert, where the physician has reviewed the patient's medical records, has examined the patient, and has applied the physician. But that's another way of saying, as I understand what the trial court did, was she said in exercising her Adaubert function, there wasn't a quarrel with the qualifications of the expert. There wasn't a quarrel with the third thing you have to show, which is that it might be helpful to the jury on a matter that required expertise to its causation. Where she said you failed was the foundation or methodology upon which the opinion was generated. So it's not that she had the law wrong, but isn't it that she applied it incorrectly in this case, that it was a clear error of judgment. Isn't that really the heart of what you're saying? Your Honor, that was going to be my secondary point, that at the very least it is a clear error of judgment in her application of the standard. And I would also submit that she, one, disregarded the case law, holding that the methodology employed here is reliable under Daubert when you're dealing with a physician. And there are several cases we've cited to that, including a decision of the same district judge issued a week after the exclusion of Dr. Herr in this case. But she also appeared to have accepted the defendant's erroneous argument that a differential diagnosis is an absolute requirement when a physician is offering a causation opinion. And we've cited the court to the Sampson v. Carnival case from 2016, where Magistrate Judge Torres examined the case law within this circuit and rejected the argument in that case advanced by Carnival, which is the same argument that was advanced by the defendant below, which the trial court, again, also appeared to accept, that I didn't hear that he had adequately ruled out these alternative causes. So number one, that's not the appropriate standard, that's not required. But number two, to the extent it were required, during the voir dire, Dr. Herrera did rule out the alternative causes or potential alternative causes. And the one that the defendant really sort of advanced here was that, based on the video, Mrs. Kellner was able to stand up and limp through the rest of the perfect couples game. And the defendant's position appeared to be that, well, she clearly didn't rupture Achilles tendon when she fell because it would have been impossible for her to walk around. Well, on voir dire, Dr. Herrera explicitly addressed that and said, no, no, she had a high-grade partial tear and, quote, you're still able to function on the foot somewhat with a high-grade partial tear. And that's at docket entry 131 at pages 224 to 225. Mr. Lehman, did you represent Ms. Herrera in the district court? I did not, Your Honor. We are appellate counsel. Because there's a substantial body of law in Florida that establishes that you don't need a medical expert to establish causation if the injury is readily observable. Was that argued to the district court? There was some argument over that, yes, Your Honor, below. And the district court accepted the other body of law that, or at least the defendant's contention, that this was not readily observable, that it was a soft tissue injury that could not be observed. But our position, frankly, which was argued to the district court is that . . . I think that's a better argument. Did the court make a finding of fact that the causal link between the rupture and the slip and fall was not readily observable? Yes, Your Honor, I believe the court did. It made a finding of fact? It didn't explicitly make a finding of fact. My understanding from reviewing the record was that they accepted the defendant's argument, that she accepted the defendant's argument, that it's a soft tissue injury. You can't visibly see the ruptured Achilles tendon, and therefore, you needed the expert evidence. But that's not the heart of your argument on appeal before us. It's not, Your Honor. Your argument is a different argument. If I understand your argument as to the expert, you're simply arguing on the issue of causation. The trial judge's mistake was a clear abuse of discretion in precluding the expert from testifying. That's your argument. Yes, Your Honor. With the secondary argument being she also made a mistake of law insofar as she required some differential analysis as a foundation for being able to opine about a matter like this. Correct. Okay. Correct, Your Honors. Getting back to that, the differential diagnosis, to the extent it was required, again, Dr. Have we ever required that? We have not, Your Honor. As a state of Florida, has any intermediate court of appeals or the Supreme Court of Florida ever required a differential analysis? Not that I'm aware of. As a foundation for an orthopedic surgeon to opine about causation? No, Your Honor. The body of the case law is that the orthopedic surgeon or any treating physician is able to opine based on a review of the records, an examination of the patient, and application of the surgeon or the doctor's training and experience. Let me ask you a different question that concerns me. Even assuming, Arguendo, that you are correct, that the trial judge made a clear abuse of discretion in keeping out an expert opinion which was sufficiently well-grounded to at least get it to a jury. As I read the district court opinion, she went off on two alternate and independent grounds. One was, you didn't have any admissible evidence of medical causation. That's fatal to a tort claim. And second, she says, you did not establish at trial that she suffered any damages resulting from the defendant's negligence. The problem that I have is not necessarily with the argument that that might not have been an error as well. But I don't read you as having preserved that error on appeal in this court in your blue brief. I read your brief to say the judge really screwed up on Daubert, wrongfully kept out the expert, and therefore she was wrong about causation and we should reverse and remand. I don't read you in that blue brief to have it cited specifically as an independent ground that the judge was also wrong about her alternative holding on damages because after all, you've got to establish duty, breach, causation, and damages. And if you fail on any of the four, you lose. So if there wasn't enough evidence on damages, she was right to enter a directed verdict. Did you preserve the issue of damages? And if you did, show me where. Well, in our briefing before this court, it's at initial brief, page 36, where in fact we have a separate heading, reversal of the Daubert ruling requires reversal of the directed verdict. And it's a very short heading, but in that heading, the plaintiff expressly sought reversal of the directed verdict, quote, on the issues of causation and damages. The problem is if you look at our case law, it's crystal clear about one thing. What it says is you've got to tell us what you're quarreling with. We have to know what you think the trial court did wrong. The heading in the brief does not tell us that. The heading in the brief is that the district court made a mistake in excluding Dr. Herrera's causation opinion. That's the argument under A. And therefore, quote, reversal of the Daubert ruling requires reversal of the directed verdict. The reason we've required it is because these cases are hard and it's difficult enough for us to get the right answer, but we sure want to know what it is that you're complaining about that the trial court did wrong, so the responsive brief can respond to that. But if you simply say the court was wrong on causation in keeping out Dr. Herrera in exercising the Daubert function, but you don't say she was also wrong independently for reaching a conclusion about damages, then we're stuck with what you argued, and it's not a surprise that they would come back as they did and say, well, you didn't object to the alternative holding, and you can't come back in your reply brief, which you do, and say, see, she was wrong about damages, and bootstrap yourself that way. How do we get around that, even assuming, arguendo, you're right about both issues? You follow the problem that I have, and you're over the time, but just help me with this problem. I can answer Your Honor's question. The problem is that the ruling on damages flows directly from and is entirely dependent upon the exclusion of Dr. Herrera's causation opinion, or the right on the exclusion of Dr. Herrera's causation, and I would point the court to two places in the record where that becomes abundantly clear. During the final pretrial conference, immediately after jury selection, there were arguments on the objections to the exhibits which plaintiff had listed for trial, and that's docket entry 116 at page 199, and the defendant argued in the trial court agreed that unless and until the plaintiffs can establish causation, which everybody knew at that point required the admission of Dr. Herrera's testimony, unless and until that happens, there's no way to get into the medical records, or even for Mrs. Kellner to talk about her non-economic damages, because there's no foundation. But let's accept that she was wrong about that, that under floral law it's as clear as a bell that pain and suffering can establish a wholly independent basis for damages. You don't need to show the medical bills to establish pain and suffering, and pain and suffering would be altogether sufficient to establish damages. And let's further assume that she got it wrong, because she assumed that the only foundation for damages was the certainty of the medical bills. She made a mistake. Let's just assume that. You go back and say to her in words of substance, you got that wrong, Judge. I can prevail on damages, even if I can't show you any foundation for any medical bill, because she was in a wheelchair for six weeks, and she was disabled for six months, et cetera. Do you argue that to her? And then do you come back and argue that to us, that that was a mistake she made? She conflated damages and thought it only included these medical bills, but not this other business. Your Honor, the argument below was absolutely presented to the trial court. That's a docket entry 132 at page 57. And this is post the exclusion of Dr. Herrera. And plaintiff's trial counsel expressly stated that, and I'm quoting here, had Mrs. Kellner been able to testify regarding damages, she would have been able to tell the jury about her post-injury recovery period and the effect it had on the quality of her life. No, I accept that the lawyer said that. All I'm asking you is, on appeal, in the blue brief, did you come back to us and say the trial judge was wrong in two independent ways? Her first holding was causation. She was wrong because Herrera was properly grounded and should have been admitted. She was wrong independently about her damages because pain and suffering would state a claim and could go to the jury, and she thought it couldn't. Did you say that in the blue brief? Your Honor, there was the only mention of damages, and I would submit was sufficient, during the factual presentation we discussed the damages and the import of the exclusion of Dr. Herrera's testimony on the damages. And we also, in the site that I've already provided to the court at page 36, stated that we're seeking a reversal of directed verdict on causation and damages. And so I would submit that the inextricable nature of the damages from the causation, which is abundantly clear from the record, would be Even on page 36 of the blue brief, do you say the reason she's wrong about damages is because there was an independent foundation to it, her testimony that she sustained pain and suffering? Do I find even the words pain and suffering in the blue brief? I'll have to check on whether the words are there, but at page 36, they are not there, Your Honor. All right, why don't you do this? You reserved your full time for rebuttal, and we'll see what your colleague has to say. Thank you. Thank you, Your Honors. Good morning, and may it please the court. Jack Ryder, Jordan Cautious, on behalf of the appealee in this matter. Your Honors, I'm going to start, if I may, by highlighting the fact, as Judge Howard, you pointed out, and Judge Marcus and Wilson, I believe as well, that this is an abusive discretion standard. So I would start from the premise of, when evaluating this judge's, Judge Altanaga's decision, that the court should not evaluate, as Your Honor pointed out, whether you agree or disagree, but whether or not Judge Altanaga made a decision that was one grounded in her appropriate exercise of discretion. If we look also, Your Honor, and Judge Marcus, I want to touch upon and start from the premise of this case and what this case is about from the appellant's perspective. This has been advanced as a single issue brief. The statement of the issue in the appellant's initial brief is, quote, whether the district court abused its discretion in excluding plaintiff's expert's opinion that plaintiff's slip and fall on defendant's cruise ship caused plaintiff's Achilles tendon to rupture, unquote. Do we have photos in the record of her foot after the ruptured Achilles tendon? I do not believe so, Your Honor. I do not recall seeing photos, per se, and I also know that Dr. Herrera certainly did not review any images in reaching his conclusion, which is one of the things. Go ahead. He reviewed the video. He did review the video, Your Honor. I'm confused. I thought at some later point he said, but before he actually testified at the trial, he testified that he reviewed an MRI. Do I have that wrong? He reviewed an MRI report. He never reviewed the images. What about the x-rays? He said he did not review diagnostics. I don't recall, Your Honor, if he looked at the x-ray that was on the ship. That's what I'm talking about, because as I understood it, the ship doctor took x-rays of the foot, and I thought he reviewed, he said that he reviewed, maybe I have this wrong, but I thought what he said was he reviewed the record from the ship doctor, including the x-rays, et cetera, including specifically the x-rays. Maybe I'm erroneous. Maybe I got that wrong. Your Honor, in fact, when Dr. Herrera described, and there were two separate I'll call them causation opinions, certainly when he first formed the causation opinion at the time of his deposition, he acknowledged he had not looked at anything other than a single report, and then apparently when he got to the Daubert hearing during the trial, he then identified additional materials but not with such sufficient specificity. And critically, and I, yes. If you rupture your Achilles tendon, you can see it, can't you? I mean, it's observable. Well, Your Honor, there is no dispute as to the fact that there was a medical record that identified a ruptured Achilles tendon. The balling of the calf and the remaining soft tissue of the foot can mutate into a lump, right? Your Honor, there's no dispute about the fact that there was the finding at some point of an Achilles tendon. But you can see. And you can see the injury. Your Honor, the question, yes, Your Honor, the question is not about whether she suffered an injury, whether or not it was caused by the fall, and whether or not. . . I understand that. I understand that. But. . . That's our issue. And I'm not sure he's making this argument strongly enough. But you're an experienced personal injury lawyer, and you trial a lot of these cases, and you're familiar with the body of law in Florida, and there's a substantial body of law in Florida to support the proposition that you do not even need an expert if the injury is readily observable. You're aware of that body of law. I very much am, Your Honor, but here the injury was not readily observable for a few reasons. And I want to highlight a few points because I was going to touch right on that issue. The question, as this court held recently in Rivera v. Royal Caribbean, when this court affirmed a summary judgment in a negligence case involving a fall on a ship, much like this one, and this court actually referred to the Kellner District Judge's decision for the following proposition. When a causal link between alleged injuries and the incident at issue is not readily apparent to a layperson, expert medical testimony as to medical causation is typically required. This court continued, citing to Judge Altanaga's district court decision in Kellner, quote, without medical expert testimony, it is not possible to distinguish between the ailments Rivera experienced before the fall and those she experienced after and due to the fall. Further, due to the nature of the injuries that she alleges, including, for example, back pain, depression, anxiety, and vision issues, expert testimony is simply required in order to even understand the nature and extent of the injuries. But isn't that exactly why that case is not applicable? Listen to the injuries that that plaintiff is describing, as opposed to, in this case, there is a video that shows the woman falling. She's immediately taken to the ship's physician who diagnoses her with the torn Achilles tendon. Why isn't that an incident that has fallen to the category of an injury that is readily observable that does not require expert testimony? Multiple reasons, Your Honor. Reason number one, and we've cited to the court Tucker v. Nike, which is a district court decision where the court there specifically found that the nature and type of injury of an Achilles rupture is one that is not readily observable and one that is not appropriately addressed from causation analysis, particularly with respect to expert testimony. That's number one. We're not bound by that, right? Of course not, Your Honor. Of course. But I believe it's persuasive, of course, because it refers to the Achilles rupture. But there's more, Your Honor. There's more. Number two, Dr. Herrera acknowledged during the Daubert hearing that he never reviewed the second day of the shipboard medical report. Dr. Herrera acknowledged at that time that he had not reviewed that report, and that report specifically found that Ms. Kellner demonstrated no loss of active motor function. Dr. Herrera admitted on the stand that it was not consistent with his opinion that this was an Achilles rupture. Why wouldn't that go to the weight rather than invincibility? It goes to the issue of reliability, Your Honor, because it highlights the fact that he did not consider and rule out alternative causes. It goes back to the point of differential diagnosis. I'm setting Dr. Herrera aside. Okay. Well, let me address your question then, Your Honor, and then I'll get back, if I may, Judge Marcus, to what you just referenced. Judge Wilson, the reason why this case does not present the kind of circumstance where an expert was not required is wound up not only in the nature of the injury, which I would respectfully submit requires expert testimony, but also in the basis of the plaintiff's claim. The plaintiff has advanced this case on a single issue. They have advanced this case solely on the issue of whether or not the judge abused her discretion in excluding Dr. Herrera. They have never argued. That's why I asked him, did you make that argument to the district court, and why didn't you make that argument on appeal? If there is a finding of fact that the injury is not readily observable, that may be a clearly erroneous fact because my understanding, and there's Florida law that establishes that a ruptured Achilles tendon can be observable. Your Honor, I'm not familiar with a case that specifically says that an Achilles rupture is the kind that's readily observable. I'm personally not aware of that case, but I do want to highlight from the plaintiffs. Doesn't it involve the bawling of the calf and the remaining soft tissue of the foot mutating into a lump? Your Honor, I do not recall that quote from a case or from our medical record. I apologize, Your Honor. If that's from a specific case, it hasn't been cited in the appellant's brief, and I'm not aware of it. But if I may, Your Honor, this is the plaintiff's answers to interrogatories, which were presented to Judge Altanaga. This is at the docket 131, page 249. The plaintiffs were asked with specificity what damages they were seeking. Well, there's no evidence in this record that you can rely upon to establish that you can look at her foot and see an injury after that slip and fall. Not that I'm aware of, Your Honor. In fact, on the contrary, after the fall, there was the second day evidence, number one, that was inconsistent with an Achilles rupture, and number two, and this is also I would respectfully submit highly critical, both to the issue that addresses Your Honor's question and to Dr. Herrera's lack of reliability. All right, let's assume. I want to go to the heart of what troubles me about the ruling, the Daubert ruling, and have you help me with it. I understand your answer to be to the question Judge Wilson raised, which was independent of Herrera, can't you establish causation anyway? Your answer was, no, I don't think you can, but in any event, they never made that argument and you never had a chance to respond and the district court never grappled with it. That's correct, Your Honor. Okay, but I have a different question. They admitted it in their moving paper. I understand. Going to the testimony of Herrera, we know, one, that he is a qualified orthopedic surgeon. So the first prong of Daubert, the qualifications by background training and experience is met, right? No dispute about that. That's correct, Your Honor. And there's no dispute on prong three that expert opinion testimony would help jurors about a matter that falls within peculiar expertise of a physician. Reliable expert testimony. Yes. So the whole ballgame is the second prong, the foundation or reliability. He said he did the following things, and I want you to tell me why in the aggregate that is not enough to take his opinion to the jury. One, he said he took a clinical history of the plaintiff. He examined her. Two, he said he reviewed everything that the ship doctor had, and after all, the ship doctor was closest to the injury when it had occurred, and the ship doctor took an X-ray. The ship doctor used the Simmons test. The ship doctor took a history, and the ship doctor diagnosed her with a ruptured Achilles tendon. Three, he had what an expert rarely would have, which is actual visibility of video of the injury. She's walking fine. She's on a dance floor. She puts a balloon between her knees, and she falls. And he has the opportunity to see by his account how she fell and how that reflected on the nature of the injury. And then four, beyond all of that, he's had the opportunity to review the MRI report at least, if not the MRI itself. And so he says, based upon all of this, this is the kind of stuff that an expert like me would generally rely upon in opining about causation. Why wasn't it a clear abuse of discretion for a district court to say, he doesn't come in under Daubert? For a number of reasons, Your Honor. Reason number one, I'll start from the premise that this was not a readily observable injury, and it required an expert, and that, I would submit, is undisputed by the appellant. So when we look at what Dr. Herrera did, the totality of what he did, he testified that looking at images, radiographs, are always extremely helpful, but acknowledged that he did not do so in this case. He indicated that he performed certain testing on Ms. Kellner, but testified on page 221, document entry 131, that the testing he did has nothing to do with determining the cause of Ms. Kellner's Achilles tendon rupture. And he acknowledged that. Two critical points here, Your Honor, go back to the fact that Dr. Herrera, it's not just what he did, but it's what he failed to do. It's the lack of a differential diagnosis, which I would submit, in this case, was a necessary component of a causation analysis. The reason being is that there were multiple reasons, multiple alternative causes that Dr. Herrera identified when he watched the video. The fact that he watched the whole video... Why don't those go to the weight? Because they go to the heart of his reliability, Your Honor, and here's why. Number one, number one, he testified that by watching the video, he observed Ms. Kellner walking in this plantar flex position. He said that he observed it but didn't consider it. That goes to his reliability because he's acknowledging the existence of an alternative method of causation, but admits during his testimony  Then it goes to the heart of his reliability. The cases that talk about the importance of excluding other causes, those are in the toxic tort cases. Those are generally found in the general causation cases, not in the specific causation cases. Not always, Your Honor, but they come up in slip and fall cases as well. The concern that I had was when I read the district judge's opinion, where she comes down is she says that Dr. Herrera has made too great an analytical leap and that the opinion is just his ipsedixit. I guess when I, listening to the litany that Judge Marcus gave us, which I had written down as well, of what Dr. Herrera did, I don't identify an analytical leap other than perhaps what you're relying on, which is the differential diagnosis. What other than that? Because I don't think I'm persuaded by the absence of a differential diagnosis. Your Honor, I understand, and I would start from again respectfully submitting that it's okay to disagree with Judge Altanaga, but the question is, did she abuse her discretion in making that decision? So I would just point that out, but I want to answer your question more precisely. What was critical here, Your Honor, was not simply Dr. Herrera's failure to consider multiple alternative grounds, but he didn't even recognize or acknowledge the fact that Ms. Kellner had an entirely separate injury, a talofibular ligament sprain. And why that's important here is because, yes, he watched the video. He sees Ms. Kellner fall. He then sees her limping. During his examination, he said, he was asked, were you aware that on the MRI report there's a finding of a posterior talofibular ligament sprain? He says, no, I didn't realize that. He's asked Dr. Herrera, and this is in his transcript. I can provide the exact page, but we've cited it in our brief. He's asked expressly, did you consider that as a possibility as to why she's limping? Dr. Herrera says, I did not consider it. He's asked, well, isn't it possible that that's the reason why she's limping? He says, it's certainly possible. So what we end up with, it goes to the heart of causation analysis and reliability. The reason why we don't allow, respectfully, a person who's qualified to come before the jury and just say, I watched the video, I talked to the patient, and I've concluded, based on my evaluation, that this is a causal link between this fall and this injury, is to avoid ipsa dixit, to avoid the fact that he is highly qualified will be misleading to the jury. When Judge Altanaga gave Dr. Herrera multiple opportunities to evaluate, I mean, excuse me, to explain his methodology, and at the end of the day, when confronted with the fact that there were many alternative causes that he acknowledged to be possible alternative causes, he acknowledged them, the plantar flexing, the fact that she, Ms. Kellner, respectfully had a history of issues with her lower extremities. He excluded them. Excuse me? He excluded those. Your Honor, he did not. The fact that he said that he considered and excluded them is simply inaccurate. When he said he did not, again, respectfully, Your Honor, he was asked, did you see, Ms. Kellner, plantar flexing? He says, I do see it. He was asked, do you consider that to be a possible alternative cause? He says, yes, it is. Did you consider it? He says, no, I did not. He did not consider all these alternative causes. He did not evaluate and critically analyze, in a methodological manner, how he considered and ruled them out. He simply said, oh, yeah, there's nothing else that could have done this. But when confronted, he couldn't answer those questions, specifically as to the plantar flexion, and, of course, ultimately. Let me ask you a different question. The time is really short. You've gone over, but I want you to help me with it. Didn't the judge clearly err as a matter of law on the alternative holding in this case? She says two things why she's entering a directed verdict. One, there was no proof of causation because the only foundation for causation was Herrera, and I'm keeping him out under Daubert. And she says, two, quote, further, plaintiff did not establish at trial she suffered any damages resulting from the defendant's negligence. And then she has a footnote, and the footnote says, if permitted to testify, plaintiff's expert non-treating physician Herrera would have merely offered the opinion sustained in injury to the Achilles tendon during the slip and fall. Notwithstanding that the court precluded Herrera from testifying, given his opinion failed to satisfy the requirements of Daubert, even if allowed, the opinion of the doctor would have rendered did not provide, A, the causal link, or medical expenses incurred by the plaintiff as a result of the incident. It certainly wouldn't establish medical expenses. I think that's right. But doesn't that ignore a completely different theory on which the plaintiff traveled for damages to wit pain and suffering? And couldn't they establish damages through the testimony of the plaintiff? Your Honor, I... Here is the problem with that from the plaintiff's perspective. Number one, and I feel compelled to point out, as Your Honor did, they did not advance that argument. That's not my question, though. Let's assume he had squarely raised the issue. Wouldn't she have made an error of law here? Well, Your Honor, I... If the answer is no, on what possible theory could a trial judge say, you haven't established enough evidence to go to the jury on damages when the plaintiff is prepared to get on the stand and makes a proffer? I was in a wheelchair for 11 weeks. I couldn't walk for 6 months, et cetera. I suffered the following indicia of pain and suffering. Isn't that enough to take the question of damages to a jury? Your Honor, the way you just framed it, the way Your Honor just framed it, is arguably enough because of the way Your Honor framed it. Is there any question? There's no way... You say it's arguably enough. Could there be any dispute about that? Well, I'm going to... I'd like to... I want to make sure I'm answering, of course, Your Honor's question, but I keep on referring to the facts here, and I'm not even going to talk about the waiver issue. The waiver, I believe, is clear, but let me address another point. When asked specifically to identify the damages upon which Ms. Kellner was seeking injury, the only damage that they have ever identified throughout the pleadings, when asked an interrogatory answer that was presented to the court and in open court, they stated the genesis, the gist of their damages claim, their case, comes from this Achilles issue. I think that's right, but there comes a point where he makes a proffer to the judge, and he says, if Mrs. Kellner can testify, she's going to tell you this pain and suffering that she sustained, and those are damages. Doesn't he say that to the trial judge? Yes, Your Honor, he does say that. Why isn't that sufficient to establish the element of damages? It may be you couldn't win on it, but the only question is can you direct a verdict and take the question away from a jury? Well, I think, Your Honor, here, in the way Your Honor outlined the facts, if a person has identified that very specific kind of claim, and that's the intent that they wish to proceed on their case, I would submit that that is enough, but the plaintiff didn't do it that way in this case, and I feel obligated to go back to that because the plaintiff is the architect of their claim. The plaintiff advanced this case on the basis of an Achilles issue. On appeal, they made it a single-issue appeal. They didn't even challenge the district judge's alternative grounds, as Your Honor correctly pointed out. It doesn't even get mentioned in the initial brief. It was only when I raised it. So your argument here is really a simple one. Even if Judge Altanaga was wrong about Daubert and the expert should have come in, there is an independent ground, there was no damages, and he hasn't argued she made a mistake about that at all, and therefore he loses on those grounds, regardless of whether the trial judge exercised her Daubert function properly or not. That is our argument, Your Honor. They did not advance it in their initial brief. It's not in their statement of issue. It didn't even rear its head until it was in the reply brief after the fact, and as Your Honor pointed out, that is not an appropriate way to advance an argument. So, yes, although I do respectfully believe that Judge Altanaga correctly exercised her discretion for all the reasons I've already stated, that alternative ground, which they have not challenged on appeal, stands as an alternative basis to affirm. The last thing I'll say, and then I apologize for going over my time, is that the various places where you can see all the things that Dr. Herrera recognized as alternatives yet failed to explain how or whether he even considered them is at Docket Entry 131, pages 200 through 205, and he acknowledges alternative causes and admits that he did not consider or rule them out. In this case, I believe that, too, supports Judge Altanaga's discretion. Thank you for your time. Thank you. I request that the Court affirm. Mr. Lima? Thank you, Your Honors. I'd like to start by going back to Judge Wilson's point about whether there were any objective, observable indicia of the injury, and I would direct the Court to Mr. Kellner's testimony that after the injury, he could see her toes dangling unnaturally. That, of course, was readily observable to a layperson, her husband. The medical record, the ship's medical record, also indicates that there was swelling of the ankle. So the idea that this is something that you could just look at . . . You argued to the district court that you didn't need an expert because the injury was readily observable? We did make that argument to the district court. And the court said no? And the court said no. But you haven't raised that on appeal, that that's . . . We've argued that . . . That you don't need an expert because . . . Not that we didn't need an expert. The judge was wrong about that. If you've got all that evidence in the record, that you can take a look and see that she has a ruptured Achilles tendon. It's readily observable? Not in those terms, Your Honor. In any terms? Did you argue that? Well, the corollary argument was that under Florida law, that the pain and suffering damages, which is sort of notwithstanding whether it's readily observable . . . No, that goes to damages. But Judge Wolfson's asking a question that goes to causation itself. But let me ask you to tell me where, when I look in the record, I can find that you argued in the district court what you just said to Judge Wolfson. I'm sorry. With respect to the . . . The readily observable. The readily observable. Yeah. Where did you argue to the district court that we need not establish causation from an expert, although we think we can do it that way? We have another way. And we think causation is established independently, simply from the readily observable nature of this injury. Therefore, regardless of what you say about Herrera, right, wrong, or indifferent, we still get to the jury on causation. You said in response to Judge Wolfson, if I heard it right, that you made that argument in the district court. Just show me, help me, where can I find that in the record? In words or substance? It is in docket entry 132. Unfortunately, I don't have the paid citation readily available. If the court would like, I can spend a few moments looking for it. But there was actually even citation to a New Jersey, either state or federal, opinion by trial counsel that discusses sort of this distinction between readily observable and not readily observable, but the point being that... You don't need New Jersey law because there's a substantial body of Florida law that establishes that. Correct, Your Honor, and this was, you know, what the best trial counsel could come up with on the fly at trial, but Your Honor is correct. And the point being that the argument was made that even if we don't have him, this is a readily observable injury. I have docket entry 132. Where will I find it? I'm looking at page 36 is where the proffer by plaintiff's trial counsel talks about here.   I apologize. This is difficult to do from the lectern. Well, if you think it's going to take you some time, we'll let you submit a supplemental letter response to us within 10 days, counsel. Absolutely, Your Honor. I'd be happy to do so. I'm confident that it's there. I did review it. Unfortunately, I didn't have that. There's no question, though, that in response to Judge Wilson's question to you, you didn't make that argument on appeal before us. You didn't say Judge Altenegger was wrong for two reasons on causation. First, she got Daubert wrong, and second, you didn't need Daubert. There was a wholly independent basis to establish causation, which you had to establish, and it was from the readily observable nature of the injury. Do you say that anywhere in the blue brief? No, Your Honor. We do not. So that's not an argument you've preserved before us. We're really hearing it for the first time, an oral argument, right? It's not in the brief, Your Honor. Would you help me again with the damages? Do you have anything else that you wanted to add to why he's not right that you didn't preserve the issue that the judge made a mistake on damages before us? I would say, Your Honor, that it's apparent on the face of the record that the two issues are clearly inextricably intertwined. The plaintiff— Well, how are they inextricably intertwined on damages? I thought there are two disparate and distinct theories of damage. One is you had surgery, you had medical bills, surgical bills, et cetera, and you didn't lay the foundation for that, and a wholly distinct theory was notwithstanding that, she sustained pain and suffering, that that's a good basis. Those are two different methodologies of establishing damages. Where did you argue the second? Correct, Your Honor. I mean in this court. But both of them flow from the exclusion of Dr. Herrera. The district court made very clear that you're not— nor is the plaintiff going to be able to get in any of these medical bills or medical records because there's no foundation, because they are irrelevant, because none of those injuries, none of that pain, none of that suffering has been connected to the slip and fall on the cruise ship. And that was, I think, readily apparent from our initial brief. It was in the judge's order. Defendant was able to raise it in the answer brief, although not addressing the merits of it, simply coming forward and saying, well, yes, they've raised it in their initial brief, but they haven't really laid it out for you so that it's been deemed abandoned. So I would just say that we would submit that we've done enough to place them on notice and preserve the argument. Thank you very much. Thank you both for your efforts. Thank you, Your Honors. And we'll proceed with the next case.